IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JENISE CANMAN<br><br>Plaintiff<br><br>vs<br><br>FERNANDO BONILLA, former Secretary of State of the Commonwealth of Puerto Rico;<br>KENNETH McCLINTOCK, current Secretary of State of the Commonwealth of Puerto Rico;<br>ISABEL COLBERG;<br>CAROLL CABAÑAS-RIOS;<br>PUERTO RICO'S REAL ESTATE EXAMINING BOARD (JUNTA EXAMINADORA DE EVALUADORES PROFESIONALES DE BIENES RAICES DE PUERTO RICO);<br>JUAN R. CARABALLO-IRIGOYEN;<br>VICTOR FIGUEROA-LOPEZ;<br>PABLO J. CLAUDIO-PAGAN;<br>HOMERO GONZALEZ-LOPEZ;<br>GILBERTO CASILLAS-ESQUILIN'<br>KATHERINE FIGUEROA, in her official capacity only;<br>TEST INNOVATIONS, INC.;<br>JOHN DOE and JANE DOE and COMPANY ABC<br><br>Defendants | CIVIL 10-1250CCC |

## OPINION AND ORDER

Plaintiff Jenise Canman has filed a Section 1983 action against the Puerto Rico Real Estate Examining Board, its members Gilberto Esquilín Casillas, Homero González-López, Pablo J. Claudio-Pagán, Víctor Figueroa, and Katherine Figueroa, former Secretary of State of Puerto Rico Fernando Bonilla, Isabel Colberg, former personal assistant to Secretary Bonilla, Juan R. Caraballo-Irigoyen, former Director of the Division of Real Estate of the State Department, the current Secretary of State Kenneth McClintock (the governmental defendants) and Test Innovations Inc. (Test), "a company contracted by the Puerto Rico Department of State to administer the real estate exams." ¶14.

CIVIL 10-1250CCC						2

    The descriptions of the parties provided at pp. 4 through 7 of the complaint reflect that the following defendants are sued in their official capacity and only for injunctive relief: Secretary of State McClintock, Board member K. Figueroa, and the Board, while defendant Isabel Colberg is sued only in her individual capacity and only for compensatory damages. All remaining Board members, except for Katherine Figueroa, as well as former Secretary of State Bonilla, are sued in both their individual and official capacities, for injunctive relief and compensatory damages.

    The time frame of the events in this complaint is from August 19, 2009, when plaintiff took the real estate exam (¶27) until she received her results on August 29, 2009. The chronology is relevant as to defendant Bonilla since allegation ¶4 states that he was appointed in 2005.[1]  However, Bonilla, in his Motion for Summary Judgment (**docket entry 28**) states that following the 2008 general election, there was a change of administration resulting in his leaving office by January 2, 2009; that is, more than eight months **before** Canman took the licensing exam.[2]

    Before the Court is also a Motion to Dismiss (**docket entry 37**) filed by the government defendants Katherine Figueroa, Caroll Cabañas,[3] and Kenneth McClintock in

---

[1] Plaintiff's complete statement is "Co-defendant FERNANDO BONILLA was Puerto Rico's Secretary of State appointed in 2005 by then Governor of Puerto Rico Aníbal Acevedo Vilá at the time Plaintiff suffered from Defendants' discrimination," implying that Bonilla had a direct role in the events.

[2] In her opposition to Bonilla's Motion for Summary judgment (docket entry 32) Canman tacitly acknowledges, at page 2, ¶4, that Bonilla did not occupy the position at the time she took the exam: "We included the former Secretary of State in this lawsuit because we understand that the exam has not changed since his term in office...." Plaintiff and her attorney go on to state that they had consulted with all the attorneys in a similar lawsuit, and none of them had any objection to their request to consolidate this case with the previously filed action. Plaintiff fails to explain how consolidation would create a cause of action against Bonilla, if there is none, standing alone.

[3] Mentioned only in the caption but not identified as a Board member or mentioned in the text of the complaint.

CIVIL 10-1250CCC                                        3

their official capacities, and former Secretary Bonilla and Board members Casillas-Esquilín, González-López, Caraballo-Irigoyen, Víctor Figueroa-López and Claudio-Pagán in both their personal and official capacities, the Board itself and Isabel Colberg in her personal capacity. Canman opposed the motion (docket entry 32). The dismissal motion raises Eleventh Amendment immunity as to the claims against those governmental defendants sued in their official capacities. It is also based on failure to state a claim under §1983, due to insufficiency of the pleadings under the Iqbal/Twombly[4] standard. Movants contend that plaintiff essentially "attempts to piggy-back" on DiMarco-Zappa v. Cabanillas, 238 F.3d. 25 (1st Cir. 2001), (DiMarco), a case that started in 1988 and ended in 2001. Defendants contend that Canman has made no factual allegations against the individual defendants in **this** case that would make them liable under §1983 due to their personal involvement in the discriminatory actions allegedly taken against her. We must examine the original complaint in order to determine whether plaintiff has made, at the pleading stage, allegations that would support a plausible claim of a violation of her right as a license examinee to equal protection. The plausibility standard requires plaintiff to do more than point out similarities with the DiMarco case brought against the Board and those members who composed it more than two decades ago. Of course, none of the individual Board members who DiMarco alleged had violated **her** constitutional guarantee to equal protection back in 1988 are defendants before us. The "Introduction" to Canman's complaint, invoking the DiMarco litigation, sets the stage for a recurrent theme in her opposition: that because the prior Board members were found liable, the current Board members must likewise be responsible :

> The Board lost a 20-year long litigation in this Court, for civil rights violations claims that were extremely similar to the ones suffered by plaintiff in this case.... Given the prior litigation in this Court, Cv88-692(JP) it is reasonable to infer that defendants have knowledge that they have been acting against

---

[4] Ashcroft v. Iqbal, 129 S.Ct. 137 (2009); Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).

CIVIL 10-1250CCC                                    4

> plaintiff in clear violation of federal law, in an egregious and outrageous fashion.

Complaint, at 2-3.

This statement is followed by another conclusory allegation: "Defendants have acted in conspiracy to deprive plaintiff of her rights, as described in her complaint."  Plaintiff also makes a general reference to "**the defendants**," claiming that they

> only gave her the exam under circumstances that put her at disadvantage vis a vis Spanish speakers and failed her because she took the exam in English . . . defendants have intentionally acted and/or failed to act to make it nearly impossible for plaintiff to be certified in Puerto Rico as a broker simply because she is not a local citizen of Puerto Rican heritage, but an English-speaking New York native.

Complaint, at 2.

Canman's "Introduction" contains no facts that would allow us to draw reasonable inferences as to what misconduct a particular defendant is liable for.  Her "Factual Allegations" numbered 16 through 45 likewise do not set forth a single concrete averment against any individual defendant that would make him/her personally liable for taking actions based on discriminatory animus, in violation of the Equal Protection guarantee of the Fifth or Fourteenth Amendment.  **All** of the twenty-nine factual allegations mentioned are aimed at co-defendant Test.  Many of these refer to simple difficulties that plaintiff allegedly encountered due to the mechanics of Test's administering of the exam, such as ¶30 regarding a Test employee not informing Canman that unanswered questions would not count in her final score.[5]

The following factual allegations all point to Test's actions before, during and after Canman took the License Exam:

---

[5] She also describes the questions as "unintelligible" without placing them in the context of the exam, and imputes knowledge to Spanish speaking exam-takers of the unanswered questions matter, without any reference to the source of their knowledge.

CIVIL 10-1250CCC                                    5

> 19. In 2009, Ms. Canman attempted to register to take the real estate broker's exam in both English and Spanish....
>
> 20. Co-defendant **Test Innovations, Inc.**, the company which administers the real estate exams notified Ms. Canman that it was "illegal" for her to take the exam in both languages.
>
> 21. When Ms. Canman asked for a citation of the law prohibiting a person from taking the real estate exam in English and Spanish, no one at Test Innovations ever provided a reason.
>
> 27. Ms. Canman took the exam in English on August 19, 2009.
>
> 28. All of the instructions on how to take the exam were only in Spanish.
>
> 29. After the computer started the time exam, a **Test Innovations** employee began to explain how to navigate the exam site in English for Ms. Canman, thus occupying test time with this explanation.
>
> 31. Ms. Canman began to answer the questions, which were barely intelligible.
>
> 32. After Ms. Canman began her exam, **Test Innovations** employee gave the instructions to the 20 people who were taking the exam in Spanish in the same room with Ms. Canman, the only aspirant for the broker's license in the English language.
>
> 33. After the exam was completed, **Test Innovations** gave all the aspirants who had taken the exam in Spanish their results immediately.
>
> 34, The **Tests Innovations** employee told Ms. Canman that her exam results would not be available for a week because her answers had to be analyzed with those of other English exam takers.
>
> 35. When Ms. Canman did not receive her results in a week, she went to the offices of **Test Innovations**.
>
> 37. Ms. Canman asked to speak to the director of **Test Innovations**, but was referred to a Luisa Ortiz.
>
> 38. Ms. Ortiz told Ms. Canman that her results were not available because **Test Innovations** psychologist was still analyzing the results.

CIVIL 10-1250CCC					6

> 39. Ms. Canman asked how it could be possible that **Test Innovations** would give a test without knowing the answers.
>
> 40. Ms. Canman finally got her result on August 29, 2009.
>
> 41. According to **Test Innovations**, Ms. Canman received a grade of 58, failing the exam.
>
> 44. Ms. Canman knew the information on the test, and the only reason for her to have failed was that she took the exam in English.

The allegations numbered 47 through 51 that follow immediately thereafter in support of her First Cause of Action, Subsection V, of the complaint fare no better. Aside from being wholly conclusory and generic allegations, they do not set forth a single factual averment of misconduct and discriminatory animus by any individual defendant that would make him/her her liable for violation of Canman's equal protection rights. For that matter, there aren't averments of any kind against any individual defendant, except for their identifications as parties. The following are examples:

> 47. The acts of discrimination alleged herein were all **perpetrated by persons acting under color of state law** and/or **in conspiracy with persons** acting under color of state law. <u>Plaintiff has been illegally denied of her constitutional rights and privileges as a U.S. Citizen due to the conduct **of all co-defendants**</u>. Moreover, defendants were all personally involved in causing the violations discussed herein of plaintiff's federal protected rights, and in allowing the perpetration of violation of her federal rights.
>
> 49. <u>The acts and/or omissions perpetrated by the Defendants, . . . are a continuing nature, were intentional and demonstrate a willful, wanton and/or reckless indifference to the rights of Plaintiff</u>, such that punitive damages should be assessed against Defendants.
>
> 51. As a result of Defendants' discriminatory acts, Plaintiff is entitled to benefits, prejudgment interest, costs, attorney's fees, as well as compensatory damages, and punitive damages,

CIVIL 10-1250CCC                              7

>     and equitable relief, pursuant to 42 U.S.C. §1983, et seq., the
>     Constitution of the United States.... [6]

(Our emphasis.)

All of the governmental defendants moved for dismissal of the federal §1983 claim on the basis that (1) Eleventh Amendment immunity bars claims against them in their official capacity, and (2) failure to state a claim under 42 U.S.C. §1983 because Canman failed to aver facts demonstrating each specific individual's personal and direct involvement in causing a violation of her federally protected rights.

## ANALYSIS

A. Eleventh Amendment Immunity

Plaintiff does not challenge defendants' claim of Eleventh Amendment Immunity. In fact, she does not even discuss the doctrine of sovereign immunity in her opposition.[7] The Supreme Court, however, found in Monell v. New York Dept of Social Services, 436 U.S. 658, 690, n.55 (1978), that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Therefore, such a suit is not actually a suit against the named official personally; the real party in interest is the entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Canman having failed to challenge the applicability of Eleventh Amendment immunity to the governmental defendants, the claims against defendants sued in their official capacities for damages cannot survive.

---

[6] The second cause of action is actually a request for injunctive relief, while the third and fourth claims are made under Puerto Rico law, which we need not discuss here.

[7] Instead, she presents a treatise on the subject of qualified immunity, which movants did not invoke in their motion, and then concludes that they do not meet the requirements to claim it.

CIVIL 10-1250CCC					8

B. The Constitutional Violation Claim under §1983

Canman's invocation of DiMarco as "extremely similar" to her own lawsuit is unsupported. As noted above, the DiMarco defendants, Board members Eugenio Cabanillas, Federico Cedó, Mary Jo González, Eddie Nieves; and María Socorro Cintrón are **not** the same defendants/Board members now before us. DiMarco's complaint is further distinguishable from this case in that, unlike Canman, DiMarco pleaded particular facts:

> The Board had made the English Language version of the real estate broker license examination substantially more difficult than the Spanish language version.... The complaint further alleged that no applicant had passed the English-language exam and that certain unnamed defendants had made statements indicative of discrimination against non-Puerto Ricans. Additionally, DiMarco provided an analysis indicating differences between the English and Spanish versions of the exams, as well as a showing of mathematical errors on the grading of her individual exam."

DiMarco-Zappa, supra, at 29.

Canman, by contrast, apart from the general references to "the defendants," "persons," "all co-defendants" and "conspiracy" attempts to place herself on a par with DiMarco, yet does not go beyond a speculative level. The following statement, at page 3 of the complaint reflects this:

> [G]iven the Board's recent judicial track record, it is striking to see that it and others insist on treating citizens of the continental United States as inferior and with discriminatory animus. . . . Notwithstanding the injunction issued against the Board by this Court, plus the compensatory and punitive damages already imposed by this Court following 20 years of litigation in Civil No. 88-692(JP), it is shocking to see that Defendants still continue to willfully mistreat persons based on their heritage and background.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.' Id. Canman's complaint, in want of concrete facts to pin on the governmental defendants, repeats the DiMarco-based argument that " defendants are still giving exams in the English language that are unintelligible and preclude qualified individuals

CIVIL 10-1250CCC                                       9

from practicing their profession." Opposition, at 2.  None of these vague references allow an inference as to any particular defendant's liability for the wrongs or misconduct alleged, as stated in Iqbal, "Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 1949. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., at 1950.

"[A]s we have noted, [defendants] cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.  Yet [plaintiff's] complaint does not contain any factual allegation sufficient to plausibly suggest [ defendants'] discriminatory state of mind." Iqbal, at 1952.  Although "Twombly does not require heightened fact pleading of specifics . . . it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible." Quirós v. Muñoz, 670 F.Supp. 2d 130, 131 (D.P.R. 2009). "Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.'"

That is, a complaint requires a "showing," rather than a blanket assertion, as Canman has given us, of entitlement to relief.  Without some allegations of concrete facts in the complaint, it is hard to see how a plaintiff could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also the "grounds on which the claim rests. Id., at 1965, n.3.  As the First Circuit warned:

> The concept of "the pleading threshold" is critical. The complaint should include "a short and plaint statement" of the claim showing that the pleader is entitled to relief. Fed. R. Cv. P. 8(a), so it need not include evidentiary detail.  On the other hand, the price of entry, even to discovery, is for the plaintiff to allege a *factual predicate* concrete enough to warrant further

CIVIL 10-1250CCC				10

> proceeding, which may be costly and burdensome. Conclusory allegation in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition....
>
> But the discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation.

DM Research v. College of American Pathologists, 170 F.3d. 53, 55-56 (1st Cir.1999). (Emphasis in the original.) And as the Supreme Court, citing DM Research and expanded in Twombly, at 558, "when the allegations in a complaint however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." (Citations omitted.)

Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. A pleading that offers "labels and conclusions" or "A formulaic recitation of the elements of a cause of action will not do." Id., at 1955. Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement." Id.

At this point, we note that Canman has injected the issue of a conspiracy into her complaint's introduction, ending the section, on page 3, with "[d]efendants have acted in conspiracy to deprive Plaintiff of her rights as described in this Complaint. All of these acts have caused and continued to cause Plaintiff irreparable harm;" and again in ¶47 of her civil rights claim: "acts of discrimination alleged herein were all perpetrated by persons acting under color of state law and/or in conspiracy with persons acting under color of state law."

Terms like "conspiracy" or even "agreement," are border-line: they might well be sufficient, in conjunction with a more specific allegation, but a court is not required to accept such terms as a sufficient basis for a complaint. DM Research, supra, at 56.

> Occasionally, an implausible conclusory assertion may turn out to be true.... But the discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation.

CIVIL 10-1250CCC                                        11

<u>Id</u>.   To summarize, the analysis of plaintiff's complaint reflects a total absence of any concrete factual allegations of the individual governmental defendants' participation in a violation of her constitutional rights, a discriminatory animus toward her, or any other actionable behavior. The specific factual allegations in the complaint are directed to defendant Test, the company contracted to administer the exam, the claims for which are brought under Puerto Rico laws and references to the actions of defendants' counterparts in <u>DiMarco</u>.

Accordingly, the Puerto Rico Real Estate Examining Board, its members, Gilberto Esquilín-Casillas, Homero González-López, Pablo J. Claudio-Pagán, and Katherine Figueroa, former Secretary of State of Puerto Rico Fernando Bonilla, Isabel Colberg, former personal assistant to Secretary Bonilla, Juan R. Caraballo-Irigoyen, former Director of the Division of Real Estate of the State Department, and the current Secretary of State Kenneth McClintock's Motion to Dismiss (**docket entry 37**) is GRANTED as is former Secretary of State of Puerto Rico Fernando Bonilla's Motion for Summary Judgment (**docket entry 28**). Judgment will be entered dismissing the action against them, with prejudice.

There being no remaining federal cause of action, the Court declines to exercise jurisdiction over the claims under Puerto Rico law brought against Test Innovations, Inc., which will therefore be DISMISSED without prejudice to being filed in the Commonwealth courts.

SO ORDERED.

At San Juan, Puerto Rico, on March 28, 2011.

S/CARMEN CONSUELO CEREZO
United States District Judge